PEARSON, J.

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | CASE NO.  1:18CR0331-9 |
| Plaintiff, ) | |
| ) | |
| v. ) | JUDGE BENITA Y. PEARSON |
| ) | |
| ELONZO DAVIS, ) | |
| ) | **ORDER** |
| Defendant. ) | [Resolving ECF No. 788] |

Pending is Defendant Elonzo Davis's Emergency Motion for Compassionate Release Under the First Step Act (ECF No. 788), filed *pro se*, and Supplement to Motion for Sentence Reduction for Compassionate Release Under 18 U.S.C § 3582(c)(1)(A) (ECF No. 851), filed by appointed counsel.[1]  The Government has filed a response in opposition (ECF No. 852).  For the reasons that follow, Defendant's motion is denied.

### I. Background

In 2018, pursuant to a written Plea Agreement (ECF No. 411), Defendant pleaded guilty to Count 1 before a magistrate judge to Conspiracy to Distribute Controlled Substances in violation of 21 U.S.C. §§ 846 and 841(a)(1), (b)(1)(A).  *See* Transcript of Change of Plea Hearing (ECF No. 335); Non-document Minutes of proceedings dated December 10, 2018. Having found that Defendant's plea was knowingly, intelligently, and voluntarily made, the magistrate judge recommended that the district judge accept the plea.  *See* Report (ECF No. 271),

---

[1] The Court appointed CJA counsel for Defendant pursuant to Amended General Order No. 2020-07-2.

(1:18CR0331-9)

entered on December 10, 2018.  On January 23, 2019, the undersigned adopted the magistrate judge's report and recommendation without objection and accepted Defendant's guilty plea.[2] *See* Order (ECF No. 412).

The Court determined at the Sentencing hearing that the career offender enhancement no longer applied to Defendant given the June 6, 2019 decision of the United States Court of Appeals for the Sixth Circuit in *United States v. Havis*, 927 F.3d 382 (6th Cir. 2019) (per curiam).  The Court sentenced Defendant to 175 months of imprisonment to be followed by 10 years of supervised release.  *See* Minutes of proceedings dated August 1, 2019; Judgment in a Criminal Case (ECF No. 659).  Defendant did not appeal to the United States Court of Appeals for the Sixth Circuit.

Defendant is currently serving his prison sentence at FCI Hazelton ("Hazelton").[3]  Defendant claims, in his *pro se* filing (ECF No. 788), that he was incorrectly classified as a career offender[4] and the conditions at Hazelton (*i.e.*, "[o]ver-crowding, [u]nder-staffing") make

---

[2] Pursuant to the written Plea Agreement, on the day of sentencing, the Court dismissed the eight (8) remaining counts charged against Defendant.  *See* ECF No. 411 at Page ID # 2353, ¶ 12.

[3] *See* http://www.bop.gov/inmateloc/ (last visited Nov. 2, 2022).  Hazelton is a medium security federal correctional institution ("FCI") with a secure female facility ("SFF").  Defendant's anticipated release date is December 4, 2030.  Hazelton currently houses 2,165 total inmates (1,643 at the FCI and 522 at the SFF).  *See* https://www.bop.gov/locations/institutions/haf (last visited Nov. 2, 2022).  As of November 2, 2022, there are no confirmed active case of COVID-19 at Hazelton.  Three inmates and no staff have died and 155 inmates and 125 staff at Hazelton have recovered from COVID-19.  *See* https://www.bop.gov/coronavirus/ (last visited Nov. 2, 2022).

[4] It is patent from the record, however, that Defendant did not receive a career

(continued...)

2

(1:18CR0331-9)

him, an African-American, vulnerable to becoming seriously ill from COVID-19 should he contract it while in custody. ECF No. 788 at PageID #: 7019. The Supplement (ECF No. 851), filed by appointed counsel, incorporates the arguments contained in ECF No. 788, but also cites Defendant's purported medical condition (high blood pressure), the need for Defendant to care for an ill daughter, and expands on Defendant's rehabilitation as "extraordinary and compelling reasons" warranting early release. Defendant requests that the Court reduce his sentence to time served and place him on supervised release, with the condition he be placed on home confinement through the remainder of his custodial term. Defendant has set forth a release plan indicating places to live and work, as well as people to support him. *See* ECF No. 788 at PageID #: 7025-26; ECF No. 851 at PageID #: 7318.

## II. Legal Standard for Seeking Compassionate Release

Under 18 U.S.C. § 3582(c)(1)(A), as modified by the First Step Act, Pub. L. No. 115-391, 132 Stat. 5194 (Dec. 21, 2018), a court may reduce a defendant's sentence upon motion of the

---

[4](...continued)
offender enhancement. *See* ECF No. 851 at PageID #: 7311 (The argument in Defendant's *pro se* filing that the Court erred in finding Davis to be a career offender "is an incorrect statement of the Court's findings and application of the guidelines as reflected in the record."). Therefore, the Court is perplexed by Defendant's subsequent *pro se* filing (ECF No. 855) that contends the December 2021 decision of a Sixth Circuit panel in *United States v. McCall*, 20 F.4th 1108 (6th Cir. 2021) (concluding that courts should consider nonretroactive sentencing-law changes "in combination" with other factors when deciding whether to grant compassionate release), that has since been vacated, *United States v. McCall*, 29 F.4th 816 (6th Cir. 2022), "directly applies" to the case at bar. It is also worth noting, although not significant to this ruling, that the vacatur resulted from the Sixth Circuit voting for a rehearing *en banc* on *McCall* and oral argument was held on June 8, 2022.

3

(1:18CR0331-9)

Director of the Bureau of Prisons ("BOP") or the defendant.  The Sixth Circuit has provided that district courts must follow a "three-step test" for determining whether to grant a defendant's motion for compassionate release.  *United States v. Jones*, 980 F.3d 1098 (6th Cir. 2020).

> At step one, a court must "find[ ]" whether "extraordinary and compelling reasons warrant" a sentence reduction.  At step two, a court must "find[ ]" whether "such a reduction is consistent with *applicable* policy statements issued by the Sentencing Commission."  The Commission's policy statement on compassionate release resides in U.S.S.G. § 1B1.13.  Thus, if § 1B1.13 is still "applicable," courts must "follow the Commission's instructions in [§ 1B1.13] to determine the prisoner's eligibility for a sentence modification and the extent of the reduction authorized.  At step three, "§ 3582(c)[(1)(A)]" instructs a court to consider any applicable § 3553(a) factors and determine whether, in its discretion, the reduction authorized by [steps one and two] is warranted in whole or in part under the particular circumstances of the case."

*Id.* at 1107-1108 (alterations and emphasis in original) (citations omitted).

The conditional statement regarding the applicability of U.S.S.G. § 1B1.13 foreshadows another holding from *Jones*:  § 1B1.13 is *not* applicable to compassionate release motions filed by defendants.  *Id.* at 1109.[5]  Therefore, because there is no applicable guidance for district courts to follow at step two, "[u]ntil the Sentencing Commission updates § 1B1.13 to reflect the First Step Act, district courts have full discretion in the interim to determine whether an 'extraordinary and compelling' reason justifies compassionate release when an imprisoned person files a § 3582(c)(1)(A) motion."  *Id.*  In other words, today once a court establishes that extraordinary and

---

[5] At this writing the United States Sentencing Commission is fully staffed, after a long hiatus, and currently considering modifications to outdated § 1B1.13.  *See* U.S. Sentencing Commission to Implement First Step Act With Focus on Compassionate Release, https://www.ussc.gov/about/news/press-releases/october-28-2022 (last visited Nov. 2, 2022); *cf. Jones*, 980 F.3d at 1109 (explaining that "the Commission has not updated § 1B1.13 since the First Step Act's passage in December 2018").

4

(1:18CR0331-9)

compelling factors are present (step one), it should skip step two – until the Sentencing Commission updates § 1B1.13 – and proceed to step three, *i.e.*, the consideration of the § 3553(a) factors. *See United States v. Campos*, No. 22-5216, 2022 WL 4298703, at *2 (6th Cir. Aug. 25, 2022).

A defendant is eligible to seek compassionate release from a court after he has exhausted all administrative rights to appeal the BOP's failure to bring a motion on his behalf *or* thirty days have elapsed since requesting that the warden of his facility initiate such action. 18 U.S.C. § 3582(c)(1)(A); *United States v. Alam*, 960 F.3d 831, 834 (6th Cir. 2020) ("Prisoners who seek compassionate release have the option to take their claim to federal court within 30 days, no matter the appeals available to them.").

### III. Discussion

**A.**

Defendant contends he has properly exhausted his administrative remedies. In June 2020, he sent a request to the Warden of his institution seeking a reduction in sentence based on a debilitated medical condition (*i.e.*, a purported need to care for his ill, elderly father). *See* ECF No. 852-1. The warden denied his request. *See* ECF No. 851-2.

The Government does not concede that Defendant has satisfied the exhaustion requirement under 18 U.S.C. § 3582(c)(1)(A). *See* ECF No. 852 at PageID #: 7329 n. 3; *Alam*, 960 F.3d at 833 (6th Cir. 2020) ("They must 'fully exhaust[ ] all administrative rights' or else they must wait for 30 days after the warden's 'receipt of [their] request.' ").

5

(1:18CR0331-9)

Defendant did not present to the BOP in his request for compassionate release his alleged medical condition (high blood pressure); vulnerability to becoming seriously ill from COVID-19 should he contract it while in custody; or the need to care for one of his 12 children, whom has sickle cell anemia.  The Sixth Circuit has not yet considered issue-specific exhaustion.  The Court agrees with the recent decision of the district court in *United States v. Mullins* that the Sixth Circuit's analysis of § 3582(c)(1)(A)'s exhaustion requirement in *Alam*, 960 F.3d at 832-36, "indicates to this Court that issue-specific exhaustion is required." No. 2:17-CR-00012-25-JRG, 2022 WL 10146928, at *3 (E.D. Tenn. Oct. 17, 2022).  The compassionate release process enacted by Congress makes the BOP the initial adjudicator of defendants' claims for compassionate release and, in the case at bar, the BOP has been deprived of the opportunity to investigate the weight of Defendant's asserted medical condition, the need to care for an ill daughter and evaluate the likelihood that those hardships will continue.  The Court may not have the power to bypass the statutorily mandated process by considering those claims now.  Accordingly, Defendant's compassionate release claims based on his medical condition and family hardship could be denied without prejudice.  *See id.*; *United States v. Jeffries*, No. 14-106, 2021 WL 2000555, at *5 (W.D.Pa. May 19, 2021) (collecting cases).

**B.**

Defendant highlights his race as a risk factor that increases his susceptibility to COVID-19.  He is a 48-year-old African-American man. The Centers for Disease Control and Prevention ("CDC") website states that when compared to Non-Hispanic whites, African-Americans are 1.1x more likely to contract COVID-19, 2.3x more likely to be hospitalized from

(1:18CR0331-9)

COVID-19, and 1.7x more likely to die from COVID-19.  *See* Risk for COVID-19 Infection, Hospitalization, and Death by Race/Ethnicity, https://www.cdc.gov/coronavirus/2019-ncov/covid-data/investigations-discovery/hospitalization-death-by-race-ethnicity.html (last visited Nov. 2, 2022); *see also United States v. Elias*, 984 F.3d 516, 521 (6th Cir. 2021) (affirming denial of compassionate release and observing that "the district court properly considered the CDC guidance that was in effect at the time . . . Relying on official guidelines from the CDC is a common practice in assessing compassionate-release motions.").  Defendant is, sadly, correct that the rates of infection, hospitalization, and death from COVID-19 among African-Americans is much higher than that among Non-Hispanic whites.  But Defendant has not explained how COVID-19 patient data and inequities in social determinants of health show that *he* faces more risk from COVID-19 because he is an African-American.

Courts have said that a "defendant's status as 'a minority male does not [necessarily] constitute a risk factor for COVID-19 in the same way that an underlying medical condition does.' "  *United States v. Harris*, 505 F. Supp.3d 1152, 1162 (D. Kan. 2020) (quoting *United States v. Lamas*, No.12-20119-02-JWL, 2020 WL 5593839, at *2 (D. Kan. Sept. 18, 2020) (alteration added)); *see also United States v. Scott*, No. CR13-156 TSZ, 2020 WL 7043593, at *1 (W.D. Wash. Dec. 1, 2020) (finding that "race is not itself a risk factor" for COVID-19); *United States v. Wilson*, CCB-14-334, 2020 WL 4286873, at *2 (D. Md. Jul. 27, 2020) (dismissing argument that defendant's race amounted to an extraordinary and compelling reason warranting his release in light of the COVID-19 pandemic because he failed to provide "evidence that

7

(1:18CR0331-9)

[defendant] *himself* [was] particularly vulnerable to COVID-19") (emphasis in original); *United States v. Leigh-James*, 3:15-cr-188 (SRU), 2020 WL 4003566, at *8 (D. Conn. Jul. 15, 2020) (rejecting defendant's argument that "he is at a higher risk of serious illness because of his race"). The undersigned is not, however, constrained by these prior rulings.

More important is the evidence that Defendant is fully vaccinated – BOP records establish that Defendant received the two-dose Pfizer-BioNTech COVID-19 vaccine on March 9, 2021 and March 30, 2021. *See* BOP Health Services Record (ECF No. 852-3).[6] The Court finds that Defendant's access to  access to the COVID-19 vaccine and vaccinated status make the risk of him contracting of COVID-19 less likely, and less dangerous, and if contracted.  Under the guidance of *Traylor* and *Lemons*, a defendant's vaccination status seriously abates any compelling reason for release related to COVID-19. *See United States v. Traylor*, 16 F.4th 485, 487 (6th Cir. 2021); *United States v. Lemons*, 15 F.4th 747, 751 (6th Cir. 2021). Defendant's vaccination status, therefore, diminishes any extraordinary or compelling reason for release. *See, e.g.*, *United States v. Fowler*, No. 21-5769, 2022 WL 35591, at *1 (6th Cir. Jan. 4, 2022) (ruling that defendant "has access to the vaccine and has received at least one dose, so he cannot demonstrate that his COVID-19 risk is an 'extraordinary and compelling' reason that warrants compassionate release"); *United States v. Wymer*, 573 F. Supp.3d 1208, 1210 (N.D. Ohio 2021) (reasoning that defendant was unable to establish extraordinary and compelling reasons for release because "once an inmate has access to the COVID vaccine, he or she cannot show that a

---

[6] *See also* COVID-19 Vaccine Implementation, https://www.bop.gov/coronavirus (last visited Nov. 2, 2022) ("Inmates have also been offered booster shots in accordance with CDC guidance.").

8

(1:18CR0331-9)

fear of contracting the virus is extraordinary or compelling"); *United States v. Little*, No. 4:19CR0276, 2022 WL 4017466, at *3 (N.D. Ohio Sept. 2, 2022) (Pearson, J.); *United States v. McIlveen*, No. 4:15CR0403, 2021 WL 2463847, at *3 (N.D. Ohio June 17, 2021) (finding that defendant could not demonstrate the "extraordinary and compelling" reasons required for compassionate release because defendant had access to the COVID-19 vaccine).

  Defendant contends he suffers from high blood pressure.  But Defendant does not document his medical condition with institutional records.[7]  The BOP Clinical Practice Guidelines for the Management of Hypertension (May 18, 2015) provide recommendations for the medical management of inmates with hypertension.  In 2015, the Bureau of Justice Statistics reported that in 2011-2012, 30.2% of state and federal prisoners and 26.3% of local jail inmates had high blood pressure/hypertension.  *Medical Problems of State and Federal Prisoners and Jail Inmates, 2011-12*, U.S. Dep't of Justice (Oct. 4, 2016).  "The Courts, following CDC guidance, have found that hypertension only 'might' or 'possibly' present a risk of severe infection."  *United States v. Cole*, No. 04-109, 2022 WL 1082480, at *4 (W.D. Pa. April 9, 2022) (collecting cases); *see also* COVID-19 and Hypertension:  What We Know and Don't Know, Am. College of Cardiology (July 6, 2020)); *United States v. Moldover*, No. 14-637, 2020 WL 6731111, at *9 (E.D. Pa. Nov. 13, 2020) ("District courts have routinely denied motions for compassionate release based on allegations of only potential COVID-19 risk factors, including asthma and hypertension.").

---

  [7] Defendant has also not submitted medical records regarding his daughter's sickle cell anemia and the type of specific care her medical condition requires.

9

(1:18CR0331-9)

To the extent Defendant argues that his living conditions at Hazelton constitute cruel and unusual punishment under the Eighth Amendment, *see* ECF No. 851 at PageID #: 7314-15, such a claim would be best addressed in a civil lawsuit, rather than in a claim for relief pursuant to § 3582(c)(1)(A). *See United States v. Allard*, No. 5:00-110-DCR, 2022 WL 11859598, at *2 (E.D. Ky. Oct. 20, 2022) (citing *United States v. Myers*, No. 2: 17-cr-117, 2021 WL 4812536, at *1 n.1 (E.D. Tenn. Oct. 14, 2021) ("The defendant also raises arguments pertaining to his conditions of confinement. Such claims might be cognizable, *see, e.g.*, *Estelle v. Gamble*, 429 U.S. 97 (1976), but they should be presented in a civil lawsuit in the prisoner's district of confinement after the exhaustion of administrative remedies."); *United States v. Quijada-Castillo*, No. 3:19-cr-20, 2021 WL 1930710, at *4 (W.D. Ky. May 13, 2021) ("Redress for perceived cruel and unusual punishment is not properly sought under the First Step Act's compassionate release provision, as the statute does not contemplate a reduction in sentence or release to compensate for past governmental actions.")).

Having taken all of his concerns into consideration, the Court finds that Defendant does not present an extraordinary and compelling reason for release within the meaning of § 3582(c)(1)(A). Moreover, his purported medical condition presumably is being effectively treated and managed by the BOP. *See United States v. Roney*, No. 10-CR-130S, 2020 WL 2846946, at *6 (W.D.N.Y. June 2, 2020) (holding even though the defendant falls firmly in the high-risk group, the mere possibility of contracting COVID-19, without any showing that the BOP will not or cannot guard against or treat such a disease, does not constitute an extraordinary or compelling reason). "To be faithful to the statutory language requiring 'extraordinary and

(1:18CR0331-9)

compelling reasons,' it is not enough that Defendant suffers from . . . chronic conditions that [he] is not expected to recover from. Chronic conditions that can be managed in prison are not a sufficient basis for compassionate release." *United States v. Alvarez*, No. 3:18-cr-158-SI-01, 2020 WL 3047372, at *5 (D. Or. June 8, 2020) (denying a motion for release from a 50-year-old severely obese defendant suffering from Hepatitis C, type 2 diabetes, high blood pressure, high cholesterol, chronic liver disease, and asthma) (quoting *United States v. Ayon-Nunez*, No. 1:16-CR-00130-DAD, 2020 WL 704785, at *2-3 (E.D. Cal. Feb. 12, 2020)). Defendant alleges nothing more than the generalized possibility that he could contract COVID-19. *See United States v. Clark*, No. 5:19CR0274-1, slip. op. at 4 (N.D. Ohio May 7, 2020) (Pearson, J.) (finding mere existence of COVID-19 in prison and the possibility that defendant may be exposed to the virus do not require the prison to "fling open its doors and allow an inmate to end his term of incarceration"). In addition, Defendant has made no showing that Hazelton's plan and efforts to combat the disease are inadequate or that the BOP is unable to adequately treat him if he falls ill prior to his anticipated release date. Thus, Defendant has not presented "extraordinary and compelling" reasons for release under 18 U.S.C. § 3582(c)(1)(A).

## C.

Even assuming that extraordinary and compelling reasons exist in this case, compassionate release is denied based on a balancing of the 18 U.S.C. § 3553(a) sentencing factors. In addition to examining whether extraordinary and compelling reasons warrant a reduction in sentence, courts must consider all pertinent § 3553(a) factors and whether the inmate poses a danger to the community. *See United States v. Tomes*, 990 F.3d 500, 504 (6th Cir. 2021)

(1:18CR0331-9)

("[W]e can affirm a [district] court's denial of a defendant's compassionate release motion based on the [district] court's consideration of the § 3553(a) factors alone."), *cert. denied*, 142 S. Ct. 780 (2022). *United States v. Ruffin*, 978 F.3d 1000, 1008 (6th Cir. 2020) ("We have repeatedly recognized that district courts may deny relief under the § 3553(a) factors even if 'extraordinary and compelling' reasons would otherwise justify relief."). Indeed, during the COVID-19 pandemic, courts have found that even when an inmate's medical condition creates an extraordinary and compelling reason for compassionate release, release is not mandatory and can be refused after weighing the sentencing factors of § 3553(a). *See United States v. Pegram*, 843 Fed.Appx. 762, 764 (6th Cir. 2021) (holding that district court's weighing of sentencing factors was, standing alone, sufficient basis for denial of compassionate release).

The Court begins with the nature and circumstances of the offense. The instant conviction arose from Defendant's engagement in a significant conspiracy to distribute dangerous controlled substances while on post-release control to the Ohio Adult Parole Authority. The circulation of addictive drugs such as cocaine base presents a grave danger to the health and well-being of others in the Northeast Ohio community. The history and characteristics of Defendant also leave no doubt that compassionate release is not appropriate. Defendant's criminal history compounds the seriousness of the conduct at issue in the case at bar. His adult criminal history stretches back 30 years and involves violent conduct. It includes prior state court convictions and prison sentences for: (1) Aggravated Burglary in 2000, which involved the assault of a woman whom was pregnant at the time with Defendant's child; (2) Possession of Crack Cocaine and Powder Cocaine, and Tampering with Evidence in 2000;

(1:18CR0331-9)

(3) Possession of Crack Cocaine and Powder Cocaine, and Possession of Drug Paraphernalia in 2009; and (4) Possessing and Trafficking in Cocaine, and Endangering Children in 2013. The nature and circumstances of the instant Conspiracy to Distribute Controlled Substances offense and Defendant's history and characteristics lead the Court to conclude that such an early release from his 175-month sentence would not comport with the sentencing factors.

The remaining factors also weigh against granting Defendant's motion. He has over eight (8) years in custody remaining on his thoughtfully imposed sentence. Early release from incarceration imposed for such severe conduct would fail "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." § 3553(a)(2)(A). Releasing Defendant at this time would also fail to afford "adequate deterrence" for a dangerous drug offense. § 3553(a)(2)(B).

While the Court commends Defendant for the significant rehabilitative efforts he has taken during his incarceration, *see* ECF No. 788 at PageID #: 7025; Inmate Education Data Transcript and Inmate History (ECF No. 851-1 at PageID #: 7322-23); Certificates of Completion for the Responsible Thinking Class, Developing Yourself as a Leader, National Parenting Program (Phase I & II), and 12-hour Drug Abuse Education Course (ECF No. 851-1 at PageID #: 7324-27), the amount of time Defendant has served thus far is not sufficient to serve the purposes of sentencing. And, in total, the sentencing factors counsel against granting Defendant a compassionate release. Moreover, Defendant remains a danger to "the safety of any other person and the community," as articulated in 18 U.S.C. § 3142(g). The Court concludes Defendant's asserted reasons for early release do not outweigh the significant risks a reduced

13

(1:18CR0331-9)

sentence would pose. See *United States v. Holder* No. 1:18CR0609, 2020 WL 4570524, at * 3 (N.D. Ohio Aug. 7, 2020) (Pearson, J.) (citing *United States v. Morales*, No. 3:19-CR-00121 (KAD), 2020 WL 2097630, at *3 (D. Conn. May 1, 2020) (concluding the defendant continued to pose a real danger to the community and that the risk of this danger outweighed the extraordinary and compelling reason for release created by his medical condition).

Having carefully considered the entire record and weighed the pertinent sentencing factors as required, the Court concludes that the § 3553(a) factors weigh against compassionate release and sentence modification.

### IV.  Conclusion

Defendant's Emergency Motion for Compassionate Release Under the Fist Step Act (ECF No. 788) is denied on the merits.

IT IS SO ORDERED.

  November 3, 2022              */s/ Benita Y. Pearson*
Date                                          Benita Y. Pearson
                                                     United States District Judge